# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JAY A. KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 4165 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | Magistrate Judge Morton Denlow |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Jay A. Knox ("Claimant") seeks reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB"). This case presents the following issues: (1) whether substantial evidence supports the decision of the Administrative Law Judge ("ALJ") that the Claimant was not disabled; (2) whether the ALJ's Step 3 analysis was proper; (3) whether the ALJ made a proper credibility determination; and (4) whether the ALJ failed to properly determine Claimant's residual functional capacity ("RFC") assessment. For the following reasons, the Court denies Claimant's motion to reverse the final decision of the Commissioner and grants the Commissioner's motion for summary judgment and affirms the Commissioner's decision that the Claimant was not disabled.

## I. BACKGROUND FACTS

## A.  Procedural History

Claimant initially applied for DIB on December 7, 2004, alleging he was unable to work as of November 5, 2004.  R. 57-59.  The ALJ had earlier found Plaintiff disabled during a closed period from January 28, 2001 to November 20, 2003.  R. 12, 345.  The Social Security Administration denied his application on March 21, 2005.  R. 32-36.  Claimant then filed a request for reconsideration, which was also denied on July 1, 2005.  R. 38-42. Subsequently, Claimant requested a hearing before an ALJ.  R. 43.

On May 11, 2006, ALJ John K. Kraybill presided over a hearing at which Claimant appeared with his attorney.  R. 341-373.  On October 24, 2006, ALJ Kraybill issued a decision finding Claimant was not entitled to DIB because he was able to perform a significant number of jobs in the national economy.  R. 9-18.  Claimant then filed for a review of the ALJ's decision, and the Appeals Council denied the request by letter on June 13, 2007.  R. 4-6, 8.  Therefore, the ALJ's decision became the final decision of the Commissioner.  Claimant then filed this action for review pursuant to 42 U.S.C. § 405(g).

## B.  Hearing Testimony - May 11, 2006

### 1.  Jay A. Knox - Claimant

As of the hearing, Claimant was forty-two years old, single, and living with his five year old daughter.  R. 57, 345.  ALJ Kraybill had previously awarded Claimant DIB for a closed period spanning from February 2001 to November 2003 during which he did not work.  R. 345.  He resumed working in 2004 for a fence company but was fired later that year.  *Id.*  Subsequently, Claimant applied to and was hired as a welder by Caterpillar, but

2

Caterpillar rescinded its job offer after Claimant failed a medical exam in April 2005.  R. 124, 346-347.

Claimant stated his family physician, Dr. Eric Janota D.O., prescribed painkillers Valium and Norco which he was taking at the time of the hearing.  R. 349-50.  Because of the medication, Claimant was unable to operate a vehicle.  R. 352.  Claimant had problems climbing stairs.  R. 350.  He could cut his grass for up to twenty or thirty minutes, but because of resulting pain and swelling he then has to ice his back and use his TENS unit.[1] R. 350-51.  It would take Claimant up to two days to complete mowing his lawn in this fashion.  R. 351.  Claimant could perform most other household chores, but noted his daughter's mother helps take care of some tasks.  *Id*.  Claimant noted his pain causes him difficulty falling and staying asleep.  R. 353.

Claimant testified that during his time working for the fence company his pain medication affected his ability to concentrate on the job.  R. 354.  He could not work without medication to manage his daily pain, but the medication made him feel unsafe and nervous at work.  R. 355.  After working for an hour or so Claimant would experience swelling "like a balloon" in his back, and the only relief from the swelling would come when Claimant laid down, iced his back, and used his TENS unit.  R. 355-56.  Even when he was not working, Claimant needed to lay down about six times a day, for up to an hour each time, to manage his pain and swelling.  R. 359.  Additionally, Claimant testified that he has suffered from

_____

[1]Claimant described his TENS unit as a machine that reduces swelling by sending electric current through his affected areas.  R. 350.

migraine headaches since he was eight years old, but the migraines increased in frequency since he began experiencing the pain in his back.  R. 361-62.

Claimant feels depressed because he is not as strong as he used to be, and he worries he will not be able to fully enjoy spending time with his daughter.  R. 360.  Additionally, Claimant notices he is forgetful and short tempered, which has affected his relationships with his girlfriend and his family.  R. 361.

### 2.  Walter J. Miller, M.D. - Medical Expert (ME)

The medical expert, Dr. Miller, did not personally examine Claimant.  R. 364.  The ME was unsure of the cause and nature of the swelling in Claimant's back and suggested a neurosurgical evaluation may be appropriate to gather more information.  R. 368.  The ME noted Claimant suffered from a hernia for which he would require surgery, but the ME stated he believed Claimant could perform sedentary work.  *Id*.  The ME stated Claimant could likely do light work after his hernia was repaired.  R. 367-68.

### C.  Medical Evidence

Claimant sustained a back injury at work in February 2001.  R. 156.  When conservative treatment measures failed, he underwent a posterior spinal fusion[2] with instrumentation from L4 through S1[3] in 2002.  R. 156.  Two or three months after this

---

[2]"An operative procedure to accomplish bony ankylosis between two or more vertebrae." Stedman's Medical Dictionary (27th Ed. 2000).  Ankylosis is defined as "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint." Stedman's Medical Dictionary (27th Ed. 2000).

[3] L4 and S1 are medical shorthand for the fourth lumbar vertebrae and the first sacral vertebrae.  Further references to specific vertebrae will be formatted in this fashion.

operation, Claimant claims his spine "shattered" during rehabilitation. R. 156. Thereafter, Claimant underwent a 360-degree spinal fusion to revise his previous operation. R. 156.

### 1.    Dr. Avi Bernstein M.D. - Claimant's Spine Surgeon

After a follow-up in January 2004, Avi Bernstein, M.D., Claimant's spine surgeon, noted Claimant had completed a work conditioning program and was functioning at "the heavy level." R. 92. Dr. Bernstein stated his lower back was at maximum medical improvement, but that because of his multiple operations he should "not really work beyond the medium level." *Id*. Dr. Bernstein suggested Claimant limit himself to lifting up to fifty pounds. *Id*.

### 2.    Dr. Aftab Khan M.D. and Dr. Charles Kenney M.D. - State Agency Physicians

Claimant visited Dr. Khan, an internist, for a complete examination at the request of the State Agency. R. 97. Claimant complained to Dr. Khan that his operations had not relieved his lower back pain, and told Dr. Khan that he suffered from a "constant dull aching pain in the lower back area." *Id*. This pain radiated to his lower extremities and increased with movement and activity. *Id*. Claimant complained of tingling and numbness in his lower extremities and difficulty walking, but he did not use any assistive devices. R. 97-98. Claimant also complained of migraine headaches. R. 98.

On examination of the extremities, Dr. Khan noted no range of motion limitation in any joint and no anatomical abnormalities. R. 100. There was mild to moderate range of motion limitation in the lumbosacral spine to sixty degrees. *Id*. Claimant could walk fifty feet without an assistive device, but he limped while walking. R. 100-01. He could not

tandem walk, walk on his heels and toes, or hop on one leg. R. 101. He experienced pain while squatting and rising, and had difficulty getting on and off the examination table. *Id*. He was able to lift ten pounds but complained of pain while doing so. *Id*. Dr. Khan then stated Claimant's upper and lower extremities were normal and called the rest of the examination "unremarkable." *Id*. Dr. Khan's diagnostic impression was that Claimant suffered from lower back pain and migraine headaches. *Id*.

Dr. Charles Kenney M.D. of the State Agency reviewed the record and concluded that Claimant could perform light work with no balancing. R. 29, 103-110.

### 3. Dr. W.R. Roggenkamp M.D. - Caterpillar's Doctor

In the spring of 2005, Claimant applied for a job as a welder at Caterpillar. At the medical examination associated with his application, Dr. Roggencamp noted that Claimant had good lumbar spine range of motion, he could heel and toe walk, squat and duck, and came within an inch or two of touching his toes. R. 124. Dr. Roggenkamp was concerned, however, because the primary care physician's records indicated that Claimant had requested and been denied an increased dose of his painkillers. R. 123. Because Claimant was already on a significant dose of medication, Dr. Roggenkamp placed the following restrictions on Claimant's employment in April 2005: (1) no lifting over ten pounds; (2) no push/pull over ten pounds; (3) no prolonged bending at the waist; (4) no company vehicle operation; (5) no hazardous machinery operation; and (6) no transport/walk in the factory. *Id*. Dr. Roggenkamp noted that these restrictions essentially precluded Claimant from working in the Caterpillar factory. *Id*.

### 4.     Dr. Matthew D. Hepler M.D. - Orthopedic Surgeon

On May 15, 2006, Claimant had a consultative exam performed by Dr. Hepler regarding his back pain. R. 145. Claimant told Dr. Hepler his back and leg pain had not improved since his two spine operations, and complained he continued to experience aching and stabbing pains across the lower lumbar spine with pain, numbness, and paraesthesias down the back of his thighs. *Id.* Claimant rated his pain as four out of ten on average and eight or nine out of ten at its worst, and told Dr. Hepler he was disabled and limited to lifting no more than ten pounds as a result. *Id.* Dr. Hepler acknowledged that Claimant's back problems were complicated by his abdominal hernia. *Id.*

On examination, Dr. Hepler noted Claimant sat comfortably, rose from his chair slowly, and walked with a "wide-based but nonantalgic, nonataxic gait.[4]" R. 146. Claimant could heel and toe walk with effort. *Id.* Claimant's back was not tender to palpitation, but it had a decreased range of motion. *Id.* Claimant experienced moderate pain when reaching his hands to his upper thighs, and he extended ten degrees with moderate pain. *Id.*

The neurological exam showed full strength in the lower extremities, sensation intact to light touch, and symmetrical reflexes. *Id.* Claimant's abdomen had well-healed incisions from his abdominal hernia. *Id.* X-rays of Claimant's spine demonstrated grafts, which appeared to be well incorporated with an ample fusion mass from L4 to the sacrum, with

---

[4] An antalgic gait is defined as "a characteristic gait resulting from pain on weightbearing in which the stance phase of gait is shortened on the affected side." Stedman's Medical Dictionary (27th Ed. 2000). An ataxic gait, also called a cerebellar gait, is defined as a "wide-based gait with lateral veering, unsteadiness, and irregularity of steps; often with a tendency to fall to one or other side, forward or backward." Stedman's Medical Dictionary (27th Ed. 2000).

nothing pathologic relating to soft tissue swelling. *Id.* Dr. Hepler declared an initial diagnostic impression of chronic back pain, and noted Claimant would come back to his office for further testing. R. 146-147.

On May 24, 2006, Claimant returned to Dr. Hepler's office for further evaluation. R. 149. Dr. Hepler conducted an MRI and a CT scan of Claimant's lumbar spine. *Id.* Dr. Hepler noted mild degenerative changes at L3-4 with slight displacement of a vertebra, but noted no fluid collection in Claimant's spine and no neurological impingement. *Id.* The CT myelogram showed an adequate fusion posteriorly with the instrumentation in good position without evidence of nerve impingement. *Id.* The anterior interbody grafts[5] appeared void of fusion mass and the L5-S1 was fractured anteriorly. *Id.* Dr. Hepler's impression was a "stable status post AP spinal fusion-instrumentation of L4 to the sacrum." *Id.* There could be early evidence of adjacent segment degeneration at L3-4, and there did not appear to be an anterior interbody fusion. R. 148, 153. Dr. Hepler did not recommend surgery. R. 149. Instead, Dr. Hepler suggested Claimant take anti-inflammatory medication, perform aerobic and core strengthening exercises, and consult with a chronic pain specialist. *Id.*

### 5. Dr. Narayan S. Tata - Pain Management Specialist

Claimant visited Dr. Tata, a pain management specialist, on June 13, 2006. R. 156-59. Claimant indicated to Dr. Tata that he experienced pain at a level of six out of ten on average and at ten out of ten at its worst. R. 156. Claimant complained of a constant, heavy, and

---

[5] Interbody is defined as "[b]etween the bodies of two adjacent vertebrae." Stedman's Medical Dictionary (27th Ed. 2000).

intense back ache that occasionally sharpened and spread to his buttocks. *Id*. Claimant also complained of numbness, burning, and tingling. *Id.* Dr. Tata noted some fullness around the incisional scar with "bogginess" but found no sign of infection or drainage. R. 158. Claimant's lumbar range of motion was significantly decreased with flexion at about forty degrees. *Id*. Dr. Tata found the sensory examination was normal in the lower extremities. *Id*. Claimant's reflexes were normal, and while some of his muscles were normal others had very slightly diminished strength. *Id*.

Subsequent to his examination of Claimant, Dr. Tata wrote a letter to Claimant's attorney suggesting Claimant apply for disability benefits. R. 143. Dr. Tata expressed concern that narcotics allow Claimant to be "fairly comfortable at best," and suggested Claimant's pain would continue without improvement and possibly worsen. *Id.* Dr. Tata wrote that Claimant could not return to his former heavy work, and recommended Claimant seek vocational training at "at a sedentary to light duty level of work status." *Id.*

### 6. Dr. Rakesh K. Garg - Neurologist

After the hearing, the ALJ sent Claimant for a neurological exam by Dr. Garg. R. 137-41. At his visit with Dr. Garg on July 6, 2006, Claimant complained of chronic back pain and swelling. *Id*. Dr. Garg characterized Claimant's swelling as a "prominence of the muscle around the scar sight on his back." *Id*. Additionally, Dr. Garg noted Claimant did not appear to be in any severe pain despite driving forty miles from his home to the office and sitting in the waiting room for some time. *Id*. Dr. Garg found Claimant had no wasting or weakness of the muscles in his four extremities, and also found Claimant had full range of motion in all his joints. *Id*. Dr. Garg noted Claimant walked normally without any assistanve device. *Id*.

Dr. Garg ultimately determined Claimant's neuro exam was completely normal. *Id*. Dr. Garg was unable to make any objective findings to support Claimant's complaints of back pain. *Id*.

### D. The ALJ's Decision - October 24, 2006

Following a hearing and review of the evidence on file, the ALJ rendered a decision denying Claimant's application for DIB. R. 9-18. The ALJ reviewed Claimant's application under the familiar five-step sequential analysis. R. 13-14. *See infra*, Part II.B (Disability Standard). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since November 5, 2004, Claimant's alleged disability onset date. R. 14. At step

two, the ALJ found Claimant had the severe impairments of a vertebrogenic[6] impairment and

an abdominal hernia. *Id.* At step three, the ALJ found Claimant did not have an impairment

or combination of impairments that meets or medically equals one of the listed impairments

in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* The ALJ went on to assess Claimant's RFC

ultimately finding that Claimant has the RFC to perform the full range of sedentary work.

R. 15. In assessing Claimant's RFC, the ALJ found Claimant's medically determinable

impairments could reasonably be expected to produce the alleged symptoms but did not find

Claimant's statements concerning the symptoms to be credible. *Id.* At step four, the ALJ

found Claimant incapable of performing any past relevant work. R. 17. At step five, the ALJ

found that jobs exist in significant numbers in the national economy that Claimant can

perform. *Id.* Finally, the ALJ concluded Claimant was not under a disability from November

5, 2004 through October 24, 2006, the date of the ALJ's decision. *Id.*

## II. LEGAL STANDARDS

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ

becomes the Commissioner's final decision if the Appeals Council denies a request for

review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district

court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether

---

[6] "Arising in a vertebra or in the vertebral column." Dorland's Medical Dictionary for
Health Consumers (2007).

the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (quoting *Perales*, 402 U.S. at 401). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge between the evidence and the result." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez*, 336 F.3d at 539). It may not, however, re-evaluate the facts, "re-weigh [the] evidence . . . or substitute [its] own judgment for that of the Commissioner." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Id.* at 368-69. The reviewing court may enter

a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

## B.  Disability Standard

Disability insurance benefits ("DIB") are available to a claimant who can establish "disability" under the terms of Title II of the Social Security Act.  *Rice*, 384 F.3d at 365.  An individual is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A disabled individual is eligible for DIB, however, only if she is under a disability.  42 U.S.C. § 423(a)(1)(E).  An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).

To make this determination, one must employ a five step sequential analysis.  20 C.F.R. §§ 404.1520(a)-(f).  Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.  *White v. Barnhart*, 415 F.3d 654, 657 (7th Cir. 2005).  Once the claimant has proven he cannot continue his past

relevant work because of physical limitations, the ALJ carries the burden to show that other jobs which the claimant can perform exist in the economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

## III. DISCUSSION

This case presents the following issues: (1) whether substantial evidence supports the ALJ's decision; (2) whether the ALJ failed to connect evidence in the medical record to any listed impairment; (3) whether the ALJ made a proper credibility determination; and (4) whether the ALJ properly determined Claimant's residual functional capacity ("RFC") assessment.

### A.    Substantial Evidence Supports The ALJ's Determination That Claimant Is Not Disabled.

In the instant case, substantial evidence supports the ALJ's decision that Claimant was not disabled and had the RFC for sedentary work.[7]   The ALJ based his decision on Claimant's testimony as well as objective medical evidence and other evidence, and his RFC determination was consistent with the medical evidence of record.

The record provides ample medical evidence to support the ALJ's determination.  Dr. Bernstein, Claimant's spine surgeon, concluded Claimant could function at a heavy level after his spine operations and suggested Claimant lift no more than fifty pounds.   R. 92.

---

[7]Sedentary work is work "that involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

Dr. Khan and Dr. Kenney of the State Agency both concluded Claimant was able to perform the exertional requirements of light work. Dr. Roggenkamp, Caterpillar's examining physician, placed a number of restrictions on Claimant's employment at Caterpillar, including a ten pound limit on pushing and pulling. Dr. Hepler, an orthopedic surgeon, concluded Claimant did not require surgery and suggested Claimant take anti-inflammatory medication and perform aerobic and core strengthening exercises to alleviate his pain. Dr. Tata, Claimant's pain management specialist, acknowledged Claimant would be unable to return to heavy work, but recommended Claimant seek vocational training at the sedentary or light duty level. Dr. Garg, a consultive neurologist, was unable to make any objective findings to support Claimant's complaints of back pain.

This medical evidence, taken as a whole, indicates a common finding among the doctors that Claimant could perform sedentary work. None of the doctors suggested Claimant was unable to work, and all of the doctors indicated Claimant could, at the very least, perform the range of work allowed by the ALJ. Claimant argues the ALJ failed to account for Claimant's migraine headaches and various spinal issues, but Claimant does not provide evidence, medical or otherwise, to explain how these problems prevent him from working at a sedentary level. Therefore, the Court finds substantial evidence supports the ALJ's finding that Claimant was not disabled and could perform sedentary work.

**B.      The ALJ's Step Three Analysis Was Proper.**

Under step three of the disability analysis, the ALJ must determine whether Claimant's impairment meets or equals an impairment listed under 20 C.F.R. Pt. 404, Subpt. P, App.1.  *White v. Banhart*, 415 F.3d 654, 657 (7th Cir. 2005).  Claimant bears the burden of proving his impairment meets a listing, and Claimant must meet each of the requirements set forth in the listing.  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).  An ALJ's failure to mention specific listings, "if combined with a 'perfunctory analysis,' may require a remand."  *Id* (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).  On the other hand, an ALJ's failure to explicitly reference a relevant listing does not alone require reversal.  *See Rice v. Barnhart*, 384 F.3d 363, 369-370 (7th Cir. 2004).

Claimant argues the ALJ's decision should be reversed under *Ribaudo* because the ALJ failed to refer to a relevant listing or include a step three discussion.  However, Claimant fails to meet his burden under *Ribaudo* to show he meets the requirements of a listing.

Indeed, the ALJ's decision lacks mention of a relevant listing and also lacks a step three analysis.  The ALJ's step three determination says only the following: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments[.]" R. 14.  The Court acknowledges it is difficult to undergo a meaningful review of an ALJ's decision where the ALJ provides no insight into his analysis.

Nevertheless, the Court finds the ALJ's failure to mention a listing or provide a step three analysis is overshadowed by Claimant's failure to meet his burden of showing his impairment meets a listing. Upon examination of the record, the hearing transcript, and the Claimant's briefs, the Court finds no mention of any listing under which Claimant sought to qualify for DIB. Therefore, the Court is left to speculate as to which of the numerous listings set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1 apply to Claimant in the instant case.

Claimant cites to *Ribaudo* in support of his contention that the ALJ's failure to provide step three analysis requires reversal. In *Ribaudo*, the Court overturned an ALJ's step three decision where the ALJ failed to mention Listing 1.04A, the applicable listing, and did not evaluate evidence favorable to claimant on the listing's criteria. *Ribaudo*, 458 F.3d at 583-585. *Ribaudo* does not assist Claimant, however, because in *Ribaudo* the claimant explicitly argued he met Listing 1.04 and cited evidence directly relating to that listing. *Id.* at 583-584. Because Claimant has not indicated what listing he meets or equals here, the *Ribaudo* decision is distinguishable from the instant case.

Moreover, the *Ribaudo* holding cuts against Claimant because it outlines the burden a claimant must meet to succeed at step three. *Id.* at 583. Under *Ribaudo*, a claimant at step three "has the burden of showing that his impairments meet a listing[.]" *Id.* Because Claimant has not established what, if any, listing applies in his case, he cannot show his impairments meet any listing. In fact, the record shows Claimant, who was represented by counsel before the ALJ, never argued a listing at any point in his application process or at the hearing before the ALJ. Having progressed to this advanced stage of the application process

and litigation without once arguing for a specific listing determination, Claimant cannot now call on the ALJ's brief adverse listing determination as a cause for remand.

## C.     The ALJ's Credibility Determination Was Not Patently Wrong.

A reviewing court will overturn an ALJ's adverse credibility determination if it is patently wrong. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). The Court must accord special deference to the ALJ's credibility determinations because the ALJ "is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). This deference may be tempered "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations such as a claimant's demeanor[.]" *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (quoting *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994)).

A reviewing judge may not ignore subjective complaints of pain solely because they are unsupported by medical evidence. *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005). Nevertheless, a judge may consider discrepancies between objective medical evidence and the degree of pain a claimant claims to experience. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). Additionally, "[a]n ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

Claimant argues the ALJ was patently wrong in determining the Claimant's statements were less than credible. The ALJ questioned the Claimant's credibility for two reasons. First, the ALJ asserted that Claimant's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." R. 16. Second, the ALJ stated that "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the objective medical evidence and other factors discussed in this decision." R. 16.

First, Claimant takes issue with the ALJ's ruling that Claimant's limitations "cannot be verified." Claimant argues this contravenes 20 C.F.R. 404.1512(b)(3), which defines evidence as

> [s]tatements you or others make about your impairment(s), your restrictions, your daily activities, your efforts to work, or any other relevant statements you make to medical sources during the course of examination or treatment, or to us during interviews, on applications, in letters, and in testimony in our administrative proceedings[.]

20 C.F.R. 404.1512(b)(3). Claimant asserts that because Claimant's statements regarding his limitations constitute evidence under 404.1512(b)(3), the ALJ was required to pose substantial contradictory evidence to avoid reversal. The Claimant argues the ALJ did not adduce such evidence, however the Court finds Claimant's argument to be without merit.

The ALJ supported his credibility determination with a reasoned discussion of the record. The ALJ pointed out that despite the fact that Claimant considered himself limited in everyday activities, Claimant had been provisionally hired as a welder for Caterpillar and

wanted to take the position. Claimant was ultimately denied the position because of Dr.

Roggenkamp's concerns about Claimant's heavy dosage of painkillers, not concerns about

his physical ability to perform his duties. As the ALJ noted, Claimant's consideration of the

welding job indicated Claimant felt capable of handling manual labor, and Dr.

Roggankamp's notes suggest Claimant would have been capable of performing the job but

for his painkiller intake. R. 16, 123. Therefore, the Court rejects Claimant's argument that

the ALJ failed to adduce contradictory evidence.

Second, Claimant disputes the ALJ's finding that even if Claimant's activities were

limited to the extent Claimant suggests, it is difficult to attribute those limitations to

Claimant's medical issues considering the objective medical testimony and "other factors"

set forth in the ALJ's decision. Claimant argues such a finding is impermissible under SSR

96-7p,[8] which requires the ALJ to consider the whole record and give specific reasons for the

weight given to the individual's statements. SSR 96-7p. The Court, however, finds the ALJ

comported with the requirements of SSR 96-7p in making the disputed credibility

determination.

---

[8]"SSR 96-7p explains the factors codified in 20 C.F.R. §§ 404.1529, which include: the
claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain
or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage,
effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain
or other symptoms; treatment, other than medication, the claimant receives or has received for
relief of pain or other symptoms; any measures other than treatment the claimant uses or has
used to relieve pain or other symptoms; and any other factors concerning the claimant's
functional limitations and restrictions due to pain or other symptoms." *Kenefick v. Astrue*, 535
F. Supp. 2d 898, 907 n. 7 (N.D.Ill. 2008).

In making his credibility determination, the ALJ considered the discrepancies between Claimant's statements and the medical evidence in the record as permitted by *Sienkiewicz*. 409 F.3d at 804. The ALJ acknowledged Claimant's allegations of continuing back pain, and noted Claimant reportedly treated his condition by lying down two times a day and taking a potent dose of pain medication. R. 15.

Next, the ALJ summarized the findings of the numerous doctors involved in Claimant's case, and noted the majority placed physical limitations on Claimant but found Claimant could likely work within the recommended parameters. *Id*. For example, the ALJ noted Dr. Khan's observation that Claimant experienced pain when lifting ten pounds, but could do the lifting. *Id*. The ALJ also noted Dr. Roggenkamp placed a limit of ten pounds of lifting on Claimant's ill-fated Caterpillar employment. *Id*. Furthermore, the ALJ mentioned that Dr. Tata recommended Claimant try some vocational retraining at a sedentary or light level, indicating Dr. Tata believed Claimant was capable of performing jobs at those levels. *Id*. The ALJ also included the observations of Dr. Hepler, who echoed Dr. Roggenkamp's ten pound limitation, and the observations of Dr. Garg, who made "no objective findings to support [Claimant's] complaints of severe lower back pain" and who also recommended a ten pound limitation. *Id*.

Only after thoroughly outlining Claimant's allegations and the objective opinions of the doctors did the ALJ determine Claimant's statements regarding his limitations were less than credible. Therefore, the Court rejects Claimant's assertion that the ALJ's credibility determination was not grounded in evidence as required by SSR 96-97p.

**D.     The ALJ Properly Determined Claimant Has the RFC to Perform the Full Range of Sedentary Work.**

In determining a claimant's RFC, an "ALJ must consider whether there is an underlying 'determinable physical or mental impairment that could reasonably be expected to produce the symptoms.'" *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (quoting SSR 96-97p)).  Here, the ALJ determined "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms."  R. 15.

Having crossed that threshold, the ALJ's next step is to analyze the "intensity, persistence, and functionally limiting effects of the symptoms" to determine whether the symptoms "affect the individual's ability to do basic work activities."  SSR 96-97p.  This analysis requires an ALJ to assess the Claimant's credibility.  *Scheck*, 357 F.3d at 701.  The credibility analysis requires the ALJ to consider the record, the medical evidence, the claimant's statements, information provided by treating physicians, and any other relevant evidence.  *Id.*

Claimant attacks the ALJ's RFC assessment on several grounds.  First Claimant argues the ALJ failed to note that Dr. Garg's report is less detailed than Dr. Khan's report.  Second, Claimant argues the ALJ failed to weigh the DDS' physicians' RFC against the treating physicians' statement.  Third, Claimant argues the ALJ failed to address all of Dr. Tata's report.  Finally, Claimant argues the ALJ failed to analyze the impact of Claimant's pain upon his ability to perform activities of daily living ("ADL's") and to perform basic work activities.

First, Claimant's argument that the ALJ failed to note that Dr. Garg's report lacks the

detail of Dr. Khan's report is without merit. Claimant fails to explain how this omission on the ALJ's part would alter the ALJ's RFC determination. Moreover, upon review of Dr. Khan's report, Dr. Kenney concluded that Claimant could perform the exertional requirements of light work. R. 103-110. Therefore, Claimant's first argument fails.

Second, Claimant's argument that the ALJ failed to weigh the DDS' physicians' RFC against the treating physicians' statements fails because Claimant does not clarify which physicians he is referencing. Additionally, Claimant does not detail how this omission alters the ALJ's determination.

Even if the Claimant had clarified the specific physicians he references in this portion of his argument, such weighing of evidence would not have altered the ALJ's determination. The DDS physicians, Dr. Khan and Dr. Kenney, both concluded Claimant should be restricted to a ten pound lifting limit. R. 101, 109. Their findings differ minimally from the other medical evidence upon which the ALJ rested his sedentary RFC finding. Therefore, the Court rejects Claimant's argument that the ALJ's failure to weigh the DDS physicians' findings against other medical evidence renders the ALJ's RFC determination inadequate.

Third, Claimant's argument that the ALJ's failure to address the whole of Dr. Tata's report was impermissible fails because it does not address how the limited reference to Dr. Tata's report would alter the ALJ's determination. The ALJ only briefly makes mention of Dr. Tata's report, noting Dr. Tata recommended Claimant undergo vocational retraining for sedentary and light work. R. 15. Claimant argues it was impermissible for the ALJ to ignore Dr. Tata's determinations that Claimant had reached maximum medical improvement and

23

that Claimant's back pain will continue and may become worse.

Dr. Tata's determinations of maximum medical improvement and continuing pain are not dispositive in the instant case. The ALJ limited Claimant's RFC to a sedentary level because of Claimant's continuing pain. Furthermore, Dr. Tata's recommendation that Claimant undergo vocational retraining for light and sedentary work is indicative of Dr. Tata's belief that Claimant could perform light and sedentary work, consistent with the ALJ's RFC determination. Therefore, the ALJ was not required to further analyze Dr. Tata's report.

Finally, Claimant argues the ALJ's failure to analyze the impact of Claimant's pain upon his ability to perform ADL's and basic work activities was impermissible. Claimant suggests that according to SSR 96-98p, a proper RFC determination requires a function-by-function analysis. This argument fails, however, because the ALJ's discussion included a narrative of the relevant medical testimony and other relevant evidence including Claimant's statements.

As this Court stated in *Lewis v. Astrue*,

SSR 96-8p does not mandate a function-by-function articulation requirement. The plain language of SSR 96-8p requires the adjudicator to "consider, not articulate," Claimant's RFC in a function-by-function basis. *Corder v. Barnhart*, 2004 WL 1381124, 6 (N.D.Ill. 2004) (finding that SSR 96-8p does not require the Commissioner to articulate in detail the claimant's ability to sit, stand, or walk for long periods of time). The "Narrative Discussion Requirements" in SSR 96-8p require the ALJ to discuss an "individual's ability to perform sustained work activities in an ordinary work setting on a regular basis," and "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.*; S.S.R. 96-8p. This requirement does not require a detailed function-by-function analysis that Claimant urges. Only if the ALJ found that Claimant's ability to sit, stand, or walk was compromised would the burden of discussion fall on the ALJ. *Corder*, 2004 WL 1381125 at 6.

*Lewis v. Astrue*, 518 F. Supp. 2d. 1031, 1043 (N.D.Ill. 2008).

Here, while the ALJ did not explicitly articulate a function-by-function assessment of Plaintiff's ability to perform the numerous work-related tasks, the ALJ's articulation satisfied the requirements of SSR 96-98p. The ALJ found no evidence in the record to suggest Claimant was unable to sit, stand, or walk. Additionally, consistent with the "Narrative Discussion Requirements" section of the Ruling, the ALJ discussed the objective medical evidence, Claimant's symptoms, the medical source opinions, and other evidence. In analyzing this evidence, the ALJ reasonably concluded Claimant retained the ability to perform sedentary work - a conclusion consistent with the various medical opinions in the record. Therefore, the ALJ's RFC analysis and determination was proper.

## IV. CONCLUSION

The Court finds the following: (1) substantial evidence supports the ALJ's decision that Claimant was not disabled; (2) the ALJ's step three discussion of the listings was sufficient; (3) the ALJ's credibility determination was not patently wrong; and (4) the ALJ properly determined Claimant's RFC. **For the reasons set forth in this opinion, the Court denies Claimant's motion to reverse the final decision of the Commissioner of Social**

Security and grants the Commissioner's motion for summary judgment and affirms the

Commissioner's decision that Plaintiff was not disabled.

**SO ORDERED THIS 7th DAY OF AUGUST, 2008.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**


**Copies sent to:**

Ashley S. Rose
Law Offices of Ashley S. Rose
799 Roosevelt Road
Building 6, Suite 104
Glen Ellyn, IL 60137

Counsel for Claimant

Jonathan C. Haile
Assistant United States Attorney
219 South Dearborn Street
Suite 500
Chicago, IL 60604

Carole J. Kohn
Assistant Regional Counsel
200 West Adams Street
Suite 3000
Chicago, IL 60606

Counsel for Defendant